IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHNNIE L. WRIGHT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:11-CV-3067-O-BK |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

This case has been referred to the undersigned for Findings, Conclusions, and Recommendation on Plaintiff's *Motion for Summary Judgment* (Doc. 14) and Defendant's *Motion for Summary Judgment* (Doc. 16). For the reasons set forth herein, it is recommended that Plaintiff's *Motion for Summary Judgment* (Doc. 14) be **DENIED**, Defendant's *Motion for Summary Judgment* (Doc. 16) be **GRANTED**, and the Commissioner's decision be **AFFIRMED**.

## I. BACKGROUND[1]

### A. Procedural History

Johnnie Wright seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") under the Social Security Act. Plaintiff filed his DIB application in July 2009, due to impairments that he claimed became disabling in September 1998. (Tr. 73-74). He was last insured for DIB on

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

December 31, 1999, so he attempted to establish that he was disabled during that timeframe. (Tr. 27). Plaintiff's application was denied at all administrative levels, and he now seeks review in this Court. (Tr. 1-3, 22-30, 35-38, 41-44).

**B.     Factual History**

Plaintiff was 41 years old on his claimed disability onset date, and he had one year of college education and past relevant work as a laborer. (Tr. 73, 97, 99). During the relevant time period, from September 1998 through December 1999, all of the medical evidence in the record is from Plaintiff's treating physician, Dr. Patrick Daly. Plaintiff's medical history was notable for HIV infection and Bell's palsy in August 1998. (Tr. 252). Dr. Daly prescribed Valium for Plaintiff's anxiety at that time and deferred a physical examination for a later date. (Tr. 252). Throughout early 1999, several prescriptions for Diazepam were called in to the pharmacy for Plaintiff.² (Tr. 252). In August 1999, Plaintiff reported that he was under a lot of stress due to two deaths in his family, and was suffering from recent rectal bleeding, stomach cramps, and depression. (Tr. 252). Later that month, Plaintiff returned to Dr. Daly with complaints of continued rectal bleeding, anxiety, and fatigue, and he was given Diazepam for his anxiety. (Tr. 251).

In December 1999, Plaintiff reported being under a lot of stress due to relationship problems with his partner, and said that he had quit taking Diazepam six months previously. (Tr. 250). He reported that he worked out regularly and had no fatigue. (Tr. 250). Dr. Daly diagnosed Plaintiff with HIV, eczema, and depression secondary to his relationship problems,

---

² Diazepam is the generic form of Valium and is prescribed to treat anxiety, among other things. http://www.drugs.com/diazepam.html (last visited May 24, 2012).

and gave Plaintiff some samples of the anti-depressant Effexor. (Tr. 250). In a letter dated November 2, 2010, Dr. Daly reported that Plaintiff had HIV, neuropathy of the lower extremities, anemia, Bell's palsy, a heart block, hypertension, hyperlipidemia, fatigue, rectal bleeding, and anxiety. (Tr. 346). Dr. Daly stated that if further information was needed, he could be contacted at his office. (Tr. 346).

C.   **Administrative Hearing**

At Plaintiff's hearing, he appeared *pro se* and waived his right to counsel. Plaintiff testified that the record did not contain evidence from 1998 and 1999 from Nelson Thibodeaux, with whom Plaintiff went through a medical study. (Tr. 11). Plaintiff stated that Dr. Daly was also involved in the study, and he had tried to obtain the missing records but had been unable to do so because the records were kept by number instead of by patient name. (Tr. 11). He also reported seeing Dr. Lawstik for severe pain in his extremities. (Tr. 17). Plaintiff stated that he was disabled as of September 1998 due to HIV, Bell's palsy, the extreme fatigue caused by his medications, and recurrent shingles. (Tr. 11-12). He testified that any reference in the medical records to him "working out" just meant that he was getting up and moving around. (Tr. 15-16). The ALJ gave Plaintiff a final opportunity to discuss any evidence he wanted to present from the relevant time frame, which Plaintiff did. (Tr. 17-18).

D.   **ALJ's Findings**

The ALJ first found that Plaintiff had not engaged in any substantial gainful activity from his onset date of September 1998 through December 1999, the date he was last insured for DIB. (Tr. 27). Next, the ALJ determined that Plaintiff had the severe impairments of HIV and hypertension, but his depression was not a severe impairment. (Tr. 27-28). Nevertheless, the

ALJ found that Plaintiff's severe impairments did not meet or equal a Listing, and Plaintiff retained the residual functional capacity ("RFC") to perform a full range of medium work during the relevant time frame. (Tr. 27-28). The ALJ noted that while Plaintiff's impairments could be expected to cause the symptoms he alleged, Plaintiff's testimony about the severity of the symptoms was not fully credible to the extent that it was inconsistent with the RFC the ALJ had found. (Tr. 28). Based on Plaintiff's RFC and application of Medical-Vocational Guidelines Rules 203.29 and 203.22, the ALJ concluded that although Plaintiff was unable to perform his past relevant work, he could perform other work available in the national economy and was thus not disabled. (Tr. 29-30).

## II.  ANALYSIS

A.    **Legal Standards**

1.    **Standard of Review**

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of

credible evidentiary choices or no contrary medical findings. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

### 2.     Disability Determination

The definition of disability under the Social Security Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Pursuant to 20 C.F.R. § 404.1520(d) and 20 C.F.R. § 416.920(d), if a claimant has an impairment which meets the duration requirement and is listed in Appendix 1 or is equal to a listed impairment, Plaintiff is deemed disabled without consideration of age, education, and work experience.

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f),

416.920 (b)-(f)).  Under the first four steps of the analysis, the burden of proof lies with Plaintiff to prove disability.  *Leggett*, 67 F.3d at 564.  The analysis terminates if the Commissioner determines at any point during the first four steps that Plaintiff is disabled or is not disabled.  *Id.*  Once Plaintiff satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that Plaintiff is capable of performing.  *Greenspan*, 38 F.3d at 236.  This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

**B.**     **Issues for Review**

**1.**     **Whether the ALJ Failed to Properly Develop the Medical Record**

Plaintiff argues that the ALJ failed to address the fact that Plaintiff testified that he had been treated by two other medical sources during the relevant period, but had been unable to obtain any of the records.  (Doc. 14 at 9).  Further, Plaintiff claims, the ALJ failed to request a medical opinion from any medical source regarding Plaintiff's functioning during the relevant period, leaving the only evidence in this case regarding Plaintiff's functioning his own testimony, which the ALJ failed to develop adequately.  *Id.* at 9-11.

Defendant responds that the ALJ did consider Dr. Daly's findings as evidenced by the ALJ's citation to Plaintiff's medical records.  (Doc. 26 at 10).  Further, Defendant urges, Plaintiff testified that Dr. Daly was part of the study with Dr. Thibodeaux, and Plaintiff did not prove prejudice based on the ALJ's alleged failure to further develop the record because he did not explain what additional information would have been gained from the missing records.  *Id.* at 10-

12. Last, Defendant contends that the ALJ was not required to obtain a statement from Dr. Daly or a medical consultant regarding Plaintiff's ability to work because that decision is within the ALJ's purview. *Id.* at 12-13.

An ALJ owes a duty to a Social Security claimant to develop the record fully and fairly so as to ensure that the ALJ's decision is based on sufficient facts. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). This duty to fully develop the record is heightened when the claimant is *pro se*. *Id.* An ALJ's decision must be reversed if the ALJ failed to fulfill this duty to develop the record, and the claimant was prejudiced thereby. *Id.* To establish prejudice, the claimant must show that he "could and would have adduced evidence that might have altered the result." *Kane v. Heckler*, 731 F.2d 1216, 1219-20 (5th Cir. 1984). While an ALJ generally should request a medical source statement describing the types of work that the claimant is still capable of performing, the absence of such a statement does not make the record incomplete if the ALJ's decision is otherwise supported by substantial evidence in the existing record. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).

As an initial matter, Plaintiff's contention that the ALJ erred by failing to obtain medical records from Nelson Thibodeaux and Dr. Lawstik is meritless in that Plaintiff did not present evidence from these sources that might have altered the ALJ's opinion. *Kane*, 731 F.2d at 1219-20. Next, Plaintiff cannot show that the ALJ reversibly erred by failing to request a medical opinion about Plaintiff's physical abilities during the relevant period because the ALJ's decision that Plaintiff was capable of performing medium work is supported by substantial evidence. *Ripley*, 67 F.3d at 557. In particular, Plaintiff did not complain of weakness, only complained of fatigue once, his minimal mental health problems were well-controlled with medication, his HIV

7

appears to have been asymptomatic, his prostate cancer was effectively treated with surgery and radiation, and while his Bell's palsy caused partial facial paralysis, there is no suggestion that it interfered with his ability to work. (Tr. 250-52). Moreover, the value of obtaining a medical source opinion about Plaintiff's ability to work 12 years previously is questionable, especially considering that the ALJ ultimately had the responsibility to determine Plaintiff's RFC. 20 C.F.R. § 404.1546(c). Finally, the Court rejects Plaintiff's argument that the ALJ did not adequately develop Plaintiff's testimony as the record reflects that the ALJ allowed Plaintiff to give any and all reasons why he believed he was disabled during the relevant time frame. (Tr. 17-18).

**2.   Whether the ALJ Failed to Adequately Evaluate Plaintiff's Credibility**

Plaintiff next contends that the ALJ's findings were insufficient to establish that Plaintiff was not credible because the ALJ applied the incorrect legal standard in weighing Plaintiff's credibility by evaluating the consistency of Plaintiff's statements against the ALJ's own RFC assessment, rather than against the evidence of record. (Doc. 14 at 12). Further, Plaintiff argues that the ALJ's finding that Plaintiff was not credible is not supported by substantial evidence because the ALJ based his finding on his erroneous beliefs that (1) Plaintiff was exercising and working in home remodeling during the relevant timeframe, and (2) there was no evidence that Plaintiff was depressed during that period. *Id.* at 14-15.

Defendant responds that the ALJ properly assessed Plaintiff's credibility by relying on a variety of factors, including inconsistencies in the medical evidence, as well as Plaintiff's minimal medical treatment during the relevant time period and hearing testimony, before properly determining that his subjective complaints were not credible to the extent alleged.

(Doc. 16 at 14-15). Defendant further contends that Plaintiff's depression was minimal and easily controlled such that it did not significantly impact his ability to engage in activities. *Id.* at 16-17.

An ALJ's findings regarding the credibility of subjective symptom testimony is "entitled to considerable judicial deference." *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983). SSR 96-7 requires that, in assessing a claimant's credibility, the ALJ must consider the record as a whole, including the medical evidence, the claimant's statements about his symptoms, information provided by physicians or psychologists about the symptoms and how they affect the individual, and any other relevant evidence in the case record. SSR 96-7p, 1996 WL 374186, *1 (S.S.A. July 2, 1996).

While the ALJ in this case did incorrectly state that he had to weigh Plaintiff's credibility by evaluating the consistency of Plaintiff's statements against the ALJ's RFC assessment, the ALJ actually weighed Plaintiff's credibility against the evidence of record as he was required to do. In particular, immediately after making the credibility statement, the ALJ discussed Plaintiff's medical records and noted that (1) at the beginning of the relevant disability time period, Plaintiff was in no acute distress and had been diagnosed with HIV a year previously; (2) over the next year, Plaintiff was mainly seen by his doctor for medication adjustments and rectal bleeding, but he was generally healthy and reported that he was exercising; and (3) Plaintiff's depression during that timeframe appeared to be based on some problems he was having in his relationship, but the depression was not a severe impairment that rendered Plaintiff unable to work. (Tr. 28-29). Accordingly, the Court concludes that the ALJ correctly weighed Plaintiff's subjective complaints against the record as a whole.

Further, the Court holds that the ALJ's finding that Plaintiff was not credible is supported by substantial evidence. In part, the ALJ based his credibility finding on his beliefs that (1) Plaintiff was exercising and working in home remodeling during the relevant timeframe, and (2) there was no evidence that Plaintiff was depressed during that period. First, Plaintiff's medical records include a note that he "worked out routinely" and experienced "no fatigue" during the relevant time period. Although Plaintiff offered another explanation at the administrative hearing for what the phrase "working out" meant, the ALJ was not required to accept that explanation, and this Court cannot reweigh the evidence. *Greenspan*, 38 F.3d at 236. Further, the medical evidence indicates that Plaintiff suffered two brief episodes of depression during the relevant timeframe caused by two family deaths and relationship troubles. (Tr. 250-52). Substantial evidence thus supports the ALJ's finding that Plaintiff did not suffer from a level of depression that impaired his ability to work. *Greenspan*, 38 F.3d at 236.

The notation in Plaintiff's records about him working in home remodeling was made in 2001, outside the relevant time period. (Tr. 243). Nevertheless, the ALJ's error in that regard was harmless because the Court finds that he would not have reached a different decision even if he believed that Plaintiff had not made an inconsistent statement about working in home remodeling during the relevant timeframe. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) ("It is inconceivable that the ALJ would have reached a different conclusion on this record, even had the ALJ accepted at face value Frank's statement that she would prefer to work.").

**3.     Whether the ALJ Erred By Relying Upon the Medical-Vocational Guidelines**

Last, Plaintiff contends that the ALJ's reliance on the Grids was improper in light of Plaintiff's non-exertional mental impairments of depression, anxiety, and severe fatigue. (Doc.

10

14 at 16). In response, Defendant urges that Plaintiff had no significant limitations due to his alleged mental impairments, and the record is similarly bare regarding his complaints of fatigue. (Doc. 16 at 17-18).

The existence of significant non-exertional limitations precludes reliance on the Medical-Vocational Guidelines. *See Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000) ("If . . . the claimant suffers from non-exertional impairments or a combination of exertional and non-exertional impairments, then the Commissioner *must* rely on a vocational expert to establish that such jobs exist in the economy") (emphasis added). However, where a claimant suffers from only exertional impairments, or where his non-exertional impairments do not significantly affect his RFC, the ALJ may rely exclusively on the Grids to determine whether the claimant can perform other work available in the national economy. *Selders v. Sullivan,* 914 F.2d 614, 618 (5th Cir. 1990).

There was substantial evidence in the record here from which the ALJ could conclude that Plaintiff's non-exertional impairments of anxiety, depression, and fatigue did not limit his ability to perform medium work. First, as noted above, the medical records indicate that Plaintiff's two instances of depression were short-lived and caused by two particular incidents, as opposed to being an ongoing condition. Additionally, there is only one mention of fatigue in the record during the relevant time period, and that is followed by a notation in the record that Plaintiff was experiencing no fatigue. (Tr. 250-51). Finally, while Plaintiff did experience anxiety for a period of several months, it appears to have been well-controlled with medication as he stayed on the same prescription and dosage throughout the pertinent time period and then told his doctor that he had quit the medication for a period of six months. (Tr. 251-52). Thus, the

11

ALJ could conclude that the medical evidence did not support a finding of significant non-exertional limitations and, as such, the ALJ did not err in relying on the Grids to determine the availability of alternate work for Plaintiff.  *Selders*, 914 F.2d at 618.

### III.  CONCLUSION

For the reasons set forth above, it is recommended that Plaintiff's *Motion for Summary Judgment* (Doc. 14) be **DENIED**, Defendant's *Motion for Summary Judgment* (Doc. 16) be **GRANTED**, and the Commissioner's decision be **AFFIRMED**.

**SO RECOMMENDED** on May 31, 2012.

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE


### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE